525 P.2d 343

**The STATE of Idaho, Plaintiff-Respondent,**

v.

**Cleve STARRY, Defendant-Appellant.**

**No. 11283.**

Supreme Court of Idaho.

Aug. 1, 1974.

---

Gary W. Shaw, of Becker, Swenson & Shaw, Gooding, for defendant-appellant.

W. Anthony Park, Atty. Gen., James P. Kaufman, Asst. Atty. Gen., Boise, Robert W. Galley, Pros. Atty., Twin Falls, for plaintiff-respondent.

McQUADE, Justice.

This is an appeal from a conviction of two counts of rape. On August 14, 1972, the defendant-appellant, Cleve Starry, allegedly raped a 15 year old girl and on August 22, 1972, he allegedly raped a 14 year old girl. The appellant was arrested and charged with two counts of rape and one count of burglary.

A notice of intention to use insanity as a defense was filed with the trial court, and a psychiatric examination was ordered. A report of Starry's mental condition was prepared and submitted to the trial court by the Gateway Community Health Center which concluded that Starry was not psychotic and was able to distinguish right from wrong. Starry filed a motion contesting the report's conclusion, and the trial court held a hearing on Starry's mental condition. During the hearing two psychiatrists testified, and Starry testified that he had been hearing voices and receiving messages from God. After the hearing, the trial court entered an order which held that Starry was competent to be tried, and that he did not suffer from any mental disease or defect which substantially impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

A trial was held and the jury returned the verdict of guilty on the two counts of rape upon which a judgment was entered. Starry appeals to this Court from the judgment of conviction, and from the order of the trial court requiring him to stand trial.

In his first assignment of error, Starry contends that the trial court abused its discretion in ruling that the prosecution could question him concerning the commission of the two alleged rapes. The scope of cross-examination is governed by I.C. § 9–1205 which provides:

"The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions; but if he examine him as to other matters such examination is to be subject to the same rules as a direct examination."

Rulings on the scope of cross-examination are within the discretion of the trial court.[1] A witness may be cross-examined concerning any facts stated in direct examination or connected therewith which has been construed to mean that,

"[C]ross-examination not only as to all facts stated by a witness in his original examination, but as to other facts connected with them, directly or indirectly tending to explain, modify or qualify the inference resulting from the facts stated by the witness in his direct examination"[2]

On direct examination, Starry testified as to taking drugs and consuming alcohol on each night of the alleged rapes, and he also testified as to hearing voices of God and Satan on those nights. The inference that arises from the direct examination is that Starry was unable to control his actions and appreciate their wrongfulness. On cross-examination, Starry was questioned concerning his recollection of the events that occurred on the evenings of the two alleged rapes. When Starry took the stand and testified, he waived the privilege against self-incrimination[3] unless he specifically invoked it, and he became subject to the same rules of examination and cross-examination as all other witnesses.[4] Starry did not invoke the privilege against self-incrimination and testified that he committed the two alleged rapes. The commission of the alleged rapes was not dwelt on in the cross-examination, but rather Starry was questioned as to all the events in an attempt to show that he was in control of his faculties and knew what he was doing. The trial court did not abuse its discretion in allowing the prosecution on cross-examination to rebut the inference created by the direct examination that Starry was suffering from a mental

1. State v. Jesser, 95 Idaho 43, 501 P.2d 727 (1972); State v. Cypher, 92 Idaho 159, 438 P.2d 904 (1968); State v. Hargraves, 62 Idaho 8, 107 P.2d 854 (1940).

2. Towne v. Northwestern Mutual Life Insurance Company, 58 Idaho 83, 91, 70 P.2d 364, 366 (1937); see also State v. Jesser, supra note 1.

3. U.S.Const. Amend. V; Idaho Const. art. 1 § 13.

4. State v. Jesser, 95 Idaho 43, 501 P.2d 727 (1972); State v. Storms, 84 Idaho 372, 372 P.2d 748 (1962); State v. Larsen, 81 Idaho 90, 337 P.2d 1 (1959).

defect and unable to appreciate the wrongfulness of his conduct.

■ In Starry's second assignment of error, it is argued that the State failed to prove beyond a reasonable doubt that he was not suffering from a mental defect. It has been held that:

> "[O]nce a defendant's sanity is put in issue, the State must prove beyond a reasonable doubt either (1) that the defendant had no mental disease or defect at the time of the act, or (2) that, if such disease or defect existed, it did not cause a lack of substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." [5]

Assuming without deciding that Starry's insanity was put at issue, a review of the record reveals that there was substantial, competent evidence upon which the jury could find beyond a reasonable doubt that Starry was not suffering from a mental defect.

■■ It is argued in Starry's third assignment of error that the trial court erred in failing to give an instruction that if the jury found him to be suffering from a mental defect and that he was unable to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law that he should be acquitted.

The trial court correctly instructed the jury concerning the definition of insanity and that it had been interposed as a defense by the defendant. The instruction stated that when the defendant presented evidence that he suffered from a mental defect, the burden of proof shifted to the State to prove beyond a reasonable doubt that he did not have a mental defect.[6] The insanity instruction must not be considered alone, but must be read in the context of the other instructions.[7] The jury was also instructed that the State bore the burden of proving beyond a reasonable doubt the elements of the charges before Starry could be convicted.[8] By considering the insanity defense instruction in connection with the instruction concerning the burden of proof, it is concluded that the jury was adequately informed that if it was determined that Starry was suffering from a mental defect, he could be acquitted of the crime of rape although he committed the act.

■■ In Starry's fourth assignment of error it is argued that due to strong public feelings against sex crimes, the trial court erred in failing to give the jury a cautionary instruction that they were not to be governed by sympathy, passion or public feeling. It has been held that cautionary instructions are within the discretion of the trial court,[9] and it does not appear that

5. State v. White, 93 Idaho 153, 160, 456 P.2d 797, 804 (1969).

6. Instruction No. 17: "You are instructed that insanity as used in these instructions means a mental disease or defect which causes lack of substantial capacity either to appreciate the wrongfulness of one's conduct or to conform one's conduct to the requirements of law.
   The defendant has interposed insanity as a defense. The law presumes that a defendant is sane. This presumption is rebuttable. Where evidence has been introduced that a defendant suffered a mental disease or defect at the time of the commission of the crime charged, the State must prove beyond a reasonable doubt that the defendant did not have a mental disease or defect or that, despite some mental disease or defect, he had substantial capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law."

7. Hansen v. Howard O. Miller, Inc., 93 Idaho 314, 460 P.2d 739 (1969); Bratton v. Slininger, 93 Idaho 248, 460 P.2d 383 (1969).

8. Instruction No. 4: "In this case the burden is upon the plaintiff to prove the guilt of the defendant beyond a reasonable doubt and before you can convict him of the crime charged against him, you should require the prosecution to prove every material allegation contained in the Information beyond a reasonable doubt; and if, after a consideration of all the evidence in the case, you entertain a reasonable doubt of the truth of any of the allegations material to the offense, you cannot convict the defendant of the crime charged against him."

9. State v. Radabaugh, 93 Idaho 727, 471 P.2d 582 (1970); State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965); State v. Elsen, 68 Idaho 50, 187 P.2d 976 (1947).

the trial court abused its discretion in refusing to grant a cautionary instruction in this action.

 Starry makes several additional assignments of error that are unsupported by argument or authority. It is well established that assignments of error not supported by argument or authority need not be considered by this Court on appeal.[10]

Judgment of conviction affirmed.

SHEPARD, C. J., and DONALDSON, McFADDEN and BAKES, JJ., concur.

---

10. Supreme Court Rule 41; Baker v. Ore-Ida Foods, Inc., 95 Idaho 575, 513 P.2d 627 (1973); Church v. Roemer, 94 Idaho 782, 498 P.2d 1255 (1972); Haggerty v. Western Barge, Inc., 94 Idaho 509, 492 P.2d 48 (1971).