**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46086**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: December 9, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| KODY EVAN JONES, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott Wayman, District Judge.

Judgment of conviction for malicious harassment, <u>affirmed.</u>

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Kody Evan Jones timely appeals from his judgment of conviction entered after a jury found him guilty of malicious harassment, Idaho Code § 18-7902. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night in question, Evander Cobbs was walking with friends on the boat docks in Harrison, Idaho. Cobbs, who is of African-American heritage, testified that he and his friends passed two white men on the docks, one of whom was Jones. Once Cobbs had passed the two men and was a fair distance away, Jones shouted, "Are you for n----r power or for white power?" Cobbs walked back toward the men and asked Jones to repeat what he said. Jones repeated the statement without the racial slur: "Are you for *black* power or for white power?" (Emphasis

1

added.)  Cobbs replied, "That's not what you said."  In response, Jones's friend said, "You heard him, boy.  [Jones] said are you for black power--or for n----r power or for white power?"  Jones then said, "Yeah.  I asked you if you're for n----r power or white power."  More words were exchanged, and then Jones's friend hit Cobbs in the face, leading to an altercation between Jones, his friend, Cobbs and his friends.  Cobbs sustained a cut below his eye, bruising on his neck and elbow, and other general injuries before bystanders broke up the fight.

When the police responded to a report of the fight, a deputy encountered Jones as he was leaving the docks.  The deputy testified Jones appeared frustrated and agitated, smelled of alcohol, had blood on his shirt and had a swollen middle finger on his right hand, consistent with recently hitting something or someone.  The deputy arrested Jones and as the deputy handcuffed Jones, he protested being arrested "because of a n----r."

Thereafter, the deputy placed Jones in the backseat of a patrol car where he was videotaped.  While being videotaped, Jones talks primarily to himself, complaining the police arrested him because he is "white" and Cobbs is of African-American heritage.  Jones also makes numerous derogatory and offensive comments about individuals of African-American heritage generally and about Cobbs specifically.  Jones, however, does not use the phrase "African-American heritage" or some other appropriate descriptor.  Rather, during the video, Jones uses the word "n----r" approximately twenty times, including referring to "f--king n----r pride."  Jones also makes threatening statements about Cobbs specifically.  For example, Jones states, "Some little black man said I just started something.  F--k him and the horse he rode in on.  I'm going to tie him to a rope and hang him from a f--king tree.  That sounds pretty good to me right now, watch him squirm, gasping for air.  Oh perfect."  Further, he states, "That little n----r had it coming. . . .  We should have f--king buried him!"[1]

The State charged Jones with malicious harassment based on his interaction with Cobbs on the dock.[2]  In anticipation of trial, Jones submitted a motion in limine to exclude the video of him in the back of the patrol car, arguing that the video was not relevant and that the risk of undue prejudice substantially outweighed the video's probative value.  In response, the State

---

[1]     Jones disputes his statement was "We should have f--king buried him!" and contends that instead he said, "He should have f--king buried him!"

[2]     The man with Jones was not arrested or questioned about the incident.  Officers testified the man could not be found at the time of arrest or at the time of trial.

filed a notice under Idaho Rule of Evidence 404(b) that it intended to offer a version of the video redacting Jones's comments about being homeless, having a "rap sheet," and being on probation. The district court denied Jones's motion in limine, concluding the redacted video was relevant to show Jones's intent or his description of the incident. Further, the district court applied the balancing test under Rule 403 and concluded the video's probative value was not substantially outweighed by the risk of unfair prejudice.

During trial, Jones renewed his objection to the redacted video's admission, arguing the video was irrelevant, unduly prejudicial, and improper propensity evidence in violation of Rule 404(b). The district court overruled Jones's objection and allowed the jury to watch the redacted video. In addition to objecting to the admission of the redacted video, Jones also objected on hearsay grounds to Cobbs's testimony about the statement Jones's friend made to Cobbs when he inquired what Jones had said earlier: "You heard him, boy. [Jones] said are you for black power--or for n----r power or for white power?" The district court overruled Jones's objection. A jury found Jones guilty, and he timely appeals.

## II.

## ANALYSIS

### A.    Admissibility of Redacted Video Under Rule 404(b)

Jones challenges the district court's admission of the redacted video of Jones making racially charged statements under the intent exception to Rule 404(b) of the Idaho Rules of Evidence. Rule 404(b) prohibits evidence of acts other than the crime for which a defendant is charged if the evidence's probative value is entirely dependent on its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Propensity evidence, however, may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. I.R.E. 404(b)(2); *State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially

3

outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).

### 1.    The redacted video was relevant to Jones's intent

In this case, the "other acts" at issue are Jones's racially charged statements recorded on the redacted video. That Jones made those statements is not in dispute. Accordingly, we address only the relevancy and unfair prejudice issues. We exercise free review of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

To convict Jones of malicious harassment, the State had to prove Jones caused physical injury to Cobbs or aided and abetted Jones's friend to cause physical injury to Cobbs "maliciously and with the specific intent to intimidate or harass [Cobbs] because of [his] race." *See* I.C. § 18-7902. A person, who either before or during a crime's commission, intentionally aids, assists, facilitates, promotes, encourages, counsels, solicits, invites, helps or hires another to commit a crime can be found guilty of that crime. *State v. Smith*, 161 Idaho 782, 787, 391 P.3d 1252, 1257 (2017). "One's intent may be proved by his acts and conduct, and such is the usual and customary mode of proving intent." *State v. Folk*, 162 Idaho 620, 628, 402 P.3d 1073, 1081 (2017).

Jones argues the video was only relevant for an improper propensity purpose in violation of Rule 404(b). Specifically, Jones argues that "he holds particular views towards people of African-American heritage and that any actions he took that evening must have conformed to those views." Second, Jones argues he defended the charge by "denying being involved in [the] incident," and as a result, his intent was never at issue. In contrast, the State argues the video was relevant to prove the specific intent element of malicious harassment and, thus, is admissible under Rule 404(b)'s intent exception. We agree with the State.

This Court's decision in *State v. Tankovich*, 155 Idaho 221, 228, 307 P.3d 1247, 1254 (Ct. App. 2013) is instructive. In that case, Tankovich and his two brothers confronted a man of Puerto Rican descent, shouting profanities at him and his wife and threatening them. *Id.* at 224,

4

307 P.3d at 1250. Both Tankovich's brothers had tattoos of symbols commonly associated with white supremacy beliefs. *Id.* at 224-25, 307 P.3d at 1250-51. After the police arrived, Tankovich and one of his brothers referred to the victim using racially charged statements, including referring to the victim "as a 'f--kin' beaner' and 'f--kin' terrorist,'" and telling the police that "'they were going to take care of things themselves' and that they were 'gonna get that f--kin' beaner' while looking or pointing at the [victim and his wife.]" *Id.* at 224, 307 P.3d at 1250. At trial, the district court admitted evidence of these statements and also photographs of Tankovich's brothers' tattoos as probative of Tankovich's intent to commit malicious harassment. *Id.* The jury found Tankovich guilty, and he appealed. *Id.* at 228, 307 P.3d at 1254.

At issue on appeal was whether Tankovich's brothers' tattoos were relevant against Tankovich. *Id.* at 226, 307 P.3d at 1252. This Court concluded they were, reasoning that "the motive of one co-conspirator is probative, though not necessarily conclusive, to prove the intent of another co-conspirator." *Id.* Also at issue was whether sufficient evidence supported Tankovich's conviction. *Id.* at 228, 307 P.3d at 1254. Relying in part on the racial slurs Tankovich and his brother made in the police's presence, this Court concluded "ample evidence [supported] the jury's finding that Tankovich was motivated by racial animus." *Id.* Thus, *Tankovich* supports the proposition that a defendant's racially charged statements are proof of a defendant's racial animus, i.e., whether the defendant had a malicious, specific intent to intimidate or harass a victim because of his race.

Jones attempts to distinguish *Tankovich* on the basis that the tattoos at issue existed *before* the alleged crime, whereas Jones's statements on the video occurred *after* the crime. This purported distinction, however, ignores that Tankovich's conviction was supported by evidence of comments he made after the victim called the police to the scene and in the police's presence. Moreover, Rule 404(b)'s exceptions allow for admission of acts occurring both before and after the alleged criminal conduct. *See State v. Greensweig*, 102 Idaho 794, 798, 641 P.2d 340, 344 (Ct. App. 1982) (ruling no logical distinction between prior and subsequent acts justifies per se rule excluding subsequent acts). Jones fails to cite any authority to the contrary. Just as in *Tankovich*, Jones's statements on the redacted video are probative of Jones's racial animus toward African-Americans--and toward Cobbs in particular--and, thus those statements are probative of Jones's intent to intimidate and harass Cobbs because of his race.

Because the redacted video is probative of Jones's intent, we reject his argument that Rule 404(b) bars the video as purely propensity evidence. In essence, Jones's argument is that, because he has the propensity to use racially-charged epithets based on his "particular views towards people of African-American heritage," his statements in the video are inadmissible propensity evidence. Adopting Jones's argument would essentially eliminate the intent exception to Rule 404(b) in all cases of malicious harassment. Jones fails to cite any authority in support of such a broad-sweeping result.

We are also not persuaded by Jones's argument that his intent was never at issue because he defended the charge by denying being involved in the incident with Cobbs on the dock. Jones asserts a defendant may avoid admission of evidence of intent under Rule 404(b) by denying he committed the alleged criminal conduct (versus denying the nature of his intent when committing the conduct). In support, Jones cites *State v. Roach*, 109 Idaho 973, 712 P.2d 674 (Ct. App. 1985). In that case, Roach was charged with lewd and lascivious conduct with a fourteen-year-old boy. *Id.* Roach also had a relationship with the boy's mother, whom Roach sexually abused too. *Id.* at 973-74, 712 P.2d at 674-75. Before trial, Roach objected to the admissibility of any testimony about his sexual abuse of the mother. *Id.* The district court ruled such testimony was admissible under Rule 404(b)'s intent and common scheme exceptions. *Roach*, 109 Idaho at 973-74, 712 P.3d at 674-75. As a result, the State admitted evidence of Roach's sexual abuse of the mother, and the jury convicted Roach of lewd and lascivious conduct with the boy. *Id.* at 973, 712 P.2d at 673.

On appeal, Roach challenged the admission of evidence of his sexual abuse of the mother arguing, among other things, that this evidence did not fall under Rule 404(b)'s intent exception. *Roach*, 109 Idaho at 973, 712 P.3d at 674. This Court ruled that "intent must be at issue before evidence of other crimes is relevant." *Id.* at 974, 712 P.2d at 675. Further, the Court noted while "[i]t is not always easy to determine when intent is an issue," Roach's defense was that he did not commit the act with the boy. *Id.* at 975, 712 P.2d 676. Roach's defense was not that "he committed the act with innocent intent." *Id.* Because Roach defended by asserting he never committed lewd and lascivious conduct, the Court ruled that Roach's intent was not sufficiently at issue to admit Roach's sexual abuse of the mother as evidence of intent under Rule 404(b). *Roach*, 109 Idaho at 975, 712 P.2d at 674. In other words, the Court reasoned that because

6

Roach denied committing the alleged criminal conduct altogether, his intent was never at issue. As a result, the Court concluded it was error to admit evidence of intent under Rule 404(b).

This Court distinguished *Roach* in *State v. Brummett*, 150 Idaho 339, 247 P.3d 204 (Ct. App. 2010), a case in which the defendant's intent was at issue. In that case, Brummett was charged with burglary after stealing merchandise from a retail store in Meridian, Idaho. *Id.* at 341, 247 P.3d at 206. Before trial, the State filed a notice of intent under Rule 404(b) to introduce evidence of Brummett's prior thefts at other local retail stores. *Id.* Brummett filed a motion in limine to exclude this evidence. *Id.* The district court noted that burglary is defined as "entry into a store with intent to commit any theft," and it ruled the evidence of Brummett's thefts at other retail stores was admissible and "probative of Brummett's intent to commit the theft upon entering the store on the day in question." *Id.* at 342, 247 P.3d at 207. The jury found Brummett guilty of burglary, and he appealed. *Id.* at 341, 347 P.3d at 206.

On appeal, this Court ruled that, unlike *Roach*, "Brummett's intent to commit a theft upon his entry into the store was squarely at issue." *Id.* at 343, 247 P.3d at 208. Specifically, the Court noted that Brummett's counsel argued during closing argument "what is disputed is the intent element of the first count, the burglary, because [Brummett] . . . did not go into the store with the intent to steal these items." *Id.* Thus, in contrast to Roach who denied committing the alleged criminal conduct, "Brummett put the question of his intent upon entering the store squarely at issue." *Id.*

Jones argues that this case is like *Roach*. Specifically, Jones contends his statements in the redacted video were not related to the incident on the docks because he denied "being involved in any such incident." Jones's argument is unpersuasive in two regards. First, Jones's characterization of his statements on the video as a denial of his involvement in "the incident" is inaccurate. While it is true Jones did state on the video that, "I had nothing to do with this," he likewise admitted on the video to being present at the altercation including stating, "I'm out here arrested for something I said," "[t]hat little n----r had it coming," and, "I started this fight with this black guy." Second, Jones did not assert at trial that he was never involved in the incident, as he now argues on appeal. Rather, Jones's defense at trial, as articulated in closing argument, was that Jones had "nothing to do with the fight" and that his statement to Cobbs (although "rude," "hurtful," "negative" and "offensive") did not aid and abet the altercation. This defense,

just as in *Brummett*, placed squarely at issue Jones's racial animus, i.e., his intent to intimidate and harass Cobbs and to encourage Jones's friend to punch Cobbs because of his race.

### 2. Other considerations did not outweigh the redacted video's probative value

Having concluded the redacted video is relevant to Jones's intent to commit malicious harassment or to aid and abet the commission of that crime, we must determine whether the district court abused its discretion under the Rule 403 balancing test. Under Rule 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, waste of time, or needlessly presenting cumulative evidence. The trial court's balancing of the probative value of the evidence against the danger of admitting the evidence will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011). "Evidence is not unfairly prejudicial simply because it is damaging to a defendant's case." *State v. Sanchez*, 161 Idaho 727, 733, 390 P.3d 453, 459 (Ct. App. 2017). Rather, "[e]vidence is unfairly prejudicial when it suggests a decision on an improper basis." *Id.*

Here, the district court expressly acknowledged its discretion to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, waste of time, or needlessly presenting cumulative evidence. *See* I.R.E. 403. The court found none of these considerations warranted excluding the redacted video. With regard to prejudice, the district court found there was no danger of unfair prejudice "in light of these [statements] being [Jones's] own statements shortly after the events took place."

Jones argues this finding was an improper "*res gestae* analysis," citing *State v. Kralovec*, 161 Idaho 569, 388 P.3d 583 (2017). Jones's argument, however, misconstrues *Kralovec*. As the Idaho Supreme Court in *Kralovec* explained, the doctrine of *res gestae* allowed for the admission of evidence of other acts occurring during the commission of or in close temporal proximity to the charged offense to describe a complete story of the alleged conduct by placing it in the context of contemporaneous events. *Id.* at 573, 388 P.3d at 587. The *Kralovec* Court noted that the doctrine existed prior to Idaho's adoption of the Idaho Rules of Evidence, and it held that "evidence previously considered admissible as *res gestae* is only admissible if it meets the criteria established by the Idaho Rules of Evidence." *Id.* at 574, 388 P.3d at 588.

Contrary to Jones's suggestion, *Kralovec* does not stand for the proposition that evidence of acts committed in close proximity to the charged crime and previously admissible under the *res gestae* doctrine is no longer admissible. Rather, that evidence remains admissible if it meets the requirements of the Idaho Rules of Evidence. Indeed, in *Kralovec* the Court affirmed the district court's admission, under Rule 404(b), of a videotape of the defendant taken shortly before the charged crime. Just as in *Kralovec*, the district court in this case also concluded the redacted video was admissible under Rule 404(b). As a result, Jones's argument that the district court admitted the evidence under the *res gestae* doctrine is without merit and does not show an abuse of discretion.

In addition to challenging the district court's analysis, Jones also argues the risk of undue prejudice was apparent based on comments by some jurors during voir dire. As an example, Jones notes that Juror 15 stated racial slurs made him "angry" and other jurors "expressed similar feelings" and likely "harbored similar prejudices," although he admits they did "not verbalize them during voir dire." Based on this information, Jones argues Juror No. 15 likely voted to convict Jones based on his use of racial slurs rather than his conduct on the dock. As discussed above, however, Jones's statements on the redacted video were relevant to an element of malicious harassment, i.e., Jones's racial animus against persons of African-American heritage, including Cobbs. That jurors may have considered this admissible evidence in convicting Jones was not improper, as he asserts.[3] We hold that the redacted video was relevant under Rule 404(b) to prove Jones's intent to commit or aid and abet malicious harassment and that the district court did not abuse its discretion by concluding the probative value of the evidence was not substantially outweighed by other considerations, such as unfair prejudice.

## B.    Admissibility of Cobbs's Testimony

Jones also challenges the admission of the following testimony by Cobbs as inadmissible hearsay: "[Jones's friend said] 'You heard him, boy. [Jones] said are you for black power--or for n----r power or for white power?' And then that's when [Jones] chimed in and said, 'Yeah. I asked you if you're for n----r power or white power.'" The district court has broad discretion to

---

[3]    Moreover, Juror No. 15 assured the court he would give his best effort to remain fair and impartial until he heard all the evidence. *See State v. Sellers*, 161 Idaho 469, 482, 387 P.3d 137, 150 (Ct. App. 2016) ("A trial court does not abuse its discretion by refusing to excuse a juror for cause where the juror's answers during voir dire initially give rise to a challenge for cause, but the juror's later responses assure the court the juror will be able to remain fair and impartial.").

admit hearsay under one of the many exceptions to the rule that hearsay is generally inadmissible. We will not overturn the exercise of that discretion absent a clear showing of abuse. *State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015).

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court provides otherwise. I.R.E. 802. A statement will not be considered hearsay if it is being offered for a purpose other than to prove the truth of the matter asserted. To show that a statement is not offered for the truth of the matter asserted, the party arguing for the admission must show that the statement was relevant to an issue in the case without regard for its truthfulness. *State v. Hill*, 161 Idaho 444, 448, 387 P.3d 112, 116 (2016); *State v. Davis*, 155 Idaho 216, 219, 307 P.3d 1242, 1245 (Ct. App. 2013).

Jones asserts Cobbs's testimony is hearsay because the State offered the statement to prove the truth of the matter asserted, i.e., that Jones's friend "actually made the racially-charged statements." The State responds that it did, indeed, offer the testimony to prove Jones's friend actually made the statement but argues admission for this purpose is not for the truth of the matter asserted but rather for a nonhearsay reason to show Jones's friend and Jones's "racial motive for the crime." We agree with the State.

The statement was not hearsay because the State did not offer the statement for the truth of the matter asserted. The statement's relevance is not tied to its truth--that Jones or his friend were "for n----r power or white power"--but rather to provide context to Jones's admissions of racial animus. *See State v. Siegel*, 137 Idaho 538, 540, 50 P.3d 1033, 1035 (Ct. App. 2002) (holding that "statements offered only to provide context to a defendant's admissions are not hearsay"). This Court in *Siegel* said that "such statements made to a party in the course of a conversation are admissible 'for the limited purpose of putting the responses of the [party] in context and making them intelligible to the jury and recognizable as admissions.'" *Id.* at 541, 50 P.3d at 1036 (quoting *United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir. 1988)). As in *Siegel*, Jones's friend's statement induced Jones to admit that he had originally made the statement. The statement was necessary to describe the context of the situation surrounding the malicious harassment of Cobbs.

10

Moreover, Cobbs's testimony is admissible under a nonhearsay rule, in which a statement is not hearsay if it is offered against a party opponent and "is one the party manifested that it adopted or believed to be true." I.R.E. 801(d)(2)(B). In *State v. Nguyen*, 122 Idaho 151, 156, 832 P.2d 324, 329 (Ct. App. 1992), this Court said:

> When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.

*Id.* (quoting *United States v. Carter*, 760 F.2d 1568, 1579 (11th Cir. 1985)). Here, the evidence shows not only that Jones was the first person to make the racially-charged comment, but later did not deny that he made the statement when his friend repeated the statement to Cobbs. In fact, Jones affirmatively adopted his friend's statement and took credit for it. Consequently, under either evidentiary rule, the district court did not abuse its discretion for admitting Jones's friend's statement into evidence. *See Icanovic v. State*, 159 Idaho 524, 528, 363 P.3d 365, 369 (2015) ("If a district court reaches the correct result by an erroneous theory, this Court will affirm the order upon the correct theory.").

## C.     Cumulative Error Doctrine

Finally, Jones contends that the cumulative error doctrine applies necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). A necessary predicate to the application of the doctrine, however, is a finding of more than one error. *Id.* Jones has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine. Thus, a reversal of Jones's conviction is not necessary or warranted.

## III.

## CONCLUSION

The district court did not abuse its discretion in admitting the redacted video of Jones in the back of the police car. Additionally, the district court did not abuse its discretion by admitting Cobbs's testimony of a third-party statement. Finally, the cumulative error doctrine is not applicable. Accordingly, Jones's judgment of conviction of malicious harassment is affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

11